# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-2949

AIRBORNE BEEPERS & VIDEO, INC.,

*Plaintiff-Appellant,*

*v.*

AT&T MOBILITY LLC, F/K/A CINGULAR WIRELESS LLC,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 9134—**John F. Grady**, *Judge.*

———————

ARGUED APRIL 13, 2007—DECIDED AUGUST 24, 2007

———————

Before FLAUM, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* The only question presented in this appeal is whether the district court abused its discretion in denying Airborne Beepers & Video, Inc., leave to file a fourth amended complaint. The district court decided that the plaintiff had been given enough chances and dismissed the case with prejudice. We find no abuse of discretion and thus affirm the judgment of the district court.

**I**

As this case did not advance beyond the motion-to-dismiss stage, we take the facts alleged in the plaintiffs' complaints as true. Gustavo R. Calderon is the owner and operator of Airborne, a retail store that sells among other things cellular, pager, and long-distance telephone services. On December 1, 1997, Airborne entered into an "Authorized Dealer Agreement" with Southwestern Bell Mobile Systems, Inc. ("Southwestern Bell"), which at the time did its business under the name Cellular One-Chicago. (Southwestern Bell became part of Cingular Wireless, which itself was later taken over by AT&T. We refer to the company as Southwestern Bell in this opinion, but we have modified the caption of the case to reflect the correct name of the company.) This agreement allowed Airborne to "solicit and contract on behalf of CELLULAR ONE, with Subscribers" for communications services in exchange for a commission fee based on the number of activations of new services. The parties renewed their agreement on September 9, 1999.

On January 1, 2002, when a year remained on this renewed contract, Southwestern Bell stopped paying Airborne commissions on activations for the preceding month, residuals (based on its customers' monthly bills), and commissions for sales of insurance. In addition, Southwestern Bell began taking back Airborne's commissions on accounts when the customers failed to pay their bills, directly contracted with customers who had originally signed up with Airborne and did not compensate Airborne for those accounts, and otherwise engaged in practices that Calderon considered breaches of the agreement.

Calderon responded with this lawsuit against Southwestern Bell, which he filed on December 17, 2002, as "Gustavo R. Calderon doing business as Airborne Beepers

& Video, Inc." The original complaint contained eleven counts: breach of contract (Count I); a plea for an accounting (Count II); deceptive and fraudulent practices (Count III); breach of fiduciary duty (Count IV); unfair competition (Count V); tortious interference with business relationships (Count VI); unjust enrichment (Count VII); a pattern of racketeering in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (Count VIII); "illegal retaliation" (Count IX); "unlawful discrimination" (Count X); and intentional infliction of emotional distress (Count XI).

At that point, a seemingly endless round of motions all directed to the legal sufficiency of the complaint began; they were to continue for four and a half years. At the outset, the district court decided to treat Airborne as a plaintiff, after Southwestern Bell filed its first motion to dismiss the original complaint. In the next iteration, captioned the Verified Amended Complaint and filed on February 26, 2003, Calderon and Airborne were listed separately as plaintiffs. By the third amended complaint, Calderon had been dropped from the complaint and Airborne was the only plaintiff. With the exception of the first filing of the third amended complaint—which the court struck after it was submitted *pro se* by Calderon on Airborne's behalf but then permitted Airborne to file through an attorney—plaintiffs were represented by counsel throughout. (Airborne and Calderon have cycled through a number of attorneys; current counsel came in only to attempt the filing of the fourth amended complaint and the appeal of its denial.)

In response to each complaint, Southwestern Bell filed a motion to dismiss. (It filed a motion to strike the *pro se* third amended complaint.) The district court's patient and comprehensive ruling on the original complaint set the pattern for its rulings on plaintiffs' first two efforts at amendments. The court dismissed all of the claims in

response to each of the four motions to dismiss. Each time, the court combed the complaint to identify the claims that could, if properly pleaded, survive another motion to dismiss. It dismissed with prejudice only those claims that had no merit and dismissed without prejudice other claims that apparently had only pleading defects.

Each time it acted, the court gave the plaintiffs detailed instructions about the pleading requirements for particular claims. For example, in its opinion on the motion to dismiss the initial complaint, the court noted that Count X, which charged unlawful discrimination in contracting in violation of 18 U.S.C. § 1981(a), "is a claim that could only be brought by an individual, not a corporation." In another portion of that opinion, the court advised plaintiffs that in order to present their RICO claim (Count VIII) properly, "plaintiff should avoid generalities and provide sufficient detail for defendant to understand the claim against it by stating the specific factual bases and identifying the alleged pattern of racketeering activity." (Apparently the court never required plaintiffs to file a more definite statement, as contemplated by Rule 12(e). Although Rule 12(e) appears to be a closer fit to the problem the court was experiencing than Rule 8, at this point the difference is unimportant.)

The court admonished the plaintiffs at the conclusion of each ruling about their responsibility to comply with the pleading requirements in order to survive a subsequent motion to dismiss. In dismissing the complaint the court advised the plaintiffs "that any amended complaint must comply with the pleading requirements outlined in this opinion." A sterner warning accompanied the dismissal of the verified amended complaint:

> We advise plaintiffs' counsel to employ much greater care and precision in drafting a second amended complaint. This court has already devoted an inordi-

nate amount of time to the pleadings in this case, which in large part have been woefully deficient. If any counts of the third amended complaint are similarly deficient, plaintiffs' counsel is warned that those counts will be dismissed with prejudice and/or could be subject to possible Rule 11 ramifications.

Finally, the court opened its opinion granting Southwestern Bell's motion to dismiss the second verified complaint by expressing its disappointment in Airborne's performance.

We have repeatedly advised plaintiffs of the deficiencies in their prior complaints and given them repeated opportunities to amend. In our previous memorandum opinions, we set forth clear and explicit instructions and warned that failure to comply with them could result in dismissal of all claims with prejudice. It appears, yet again, that plaintiffs have not followed all of our instructions.

Nonetheless, it decided to permit Airborne to file a third amended complaint, even though it warned at the same time that "the amendment must comply with the pleading requirements outlined in this opinion. If the third amended complaint does not do so, it will be dismissed summarily with prejudice."

Throughout this series of dismissals the size of the complaint was shrinking, but the quality of what remained was not improving. By the time Southwestern Bell moved to dismiss the third amended complaint, the district court concluded that its warnings had not been heeded. "Instead of improving upon the most recent iteration of the complaint, plaintiff has confused matters once again. . . . All that is required of plaintiff is a simple, straightforward pleading, but plaintiff has failed to provide such a pleading time and time again despite repeated admonitions and guidance." Out of patience at last, the court dis-

missed the third amended complaint with prejudice, having already dismissed Airborne's state law claims without prejudice. Although Airborne sought leave to file a fourth amended complaint on January 4, 2006, the district court refused to grant permission for yet another version. It is this denial alone from which Airborne appeals.

## II

"We review a district court's decision to deny leave to file an amended complaint for abuse of discretion." *Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 922 (7th Cir. 2007).

Rule 15(a) provides that after a party has amended its pleading once by right, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). "The terms of the rule, however, do not mandate that leave be granted in every case." *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002). Reasons for finding that leave should not be granted include "undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed*, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, the district court spelled out for Airborne what deficiencies in the complaint needed to be remedied. Airborne's failure to fix those shortcomings provides ample grounds for dismissal. "[W]here the plaintiff has repeatedly failed to remedy the same deficiency, the district court did not abuse its discretion by dismissing the claim with prejudice." *General Elec. Capital Corp. v. Lease*

*Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). The court also gave Airborne adequate warning that refusal to comply would lead to dismissal.

Airborne's inability to follow the detailed advice of the district court as to how it could plead in compliance with federal pleading standards is difficult to understand. For example, the court's June 23, 2005, opinion in response to Southwestern Bell's motion to dismiss the second verified complaint practically mapped out how to re-plead Count I: "Paragraphs 8, 16, and 18a-w will be construed as the conduct that forms the basis of the § 1981 claim, and they should be incorporated into Count I itself in the third amended complaint." The court concluded that "[d]espite these explicit instructions, as well as our warning that if the third amended complaint did not comply with our instructions, it would be dismissed with prejudice, plaintiff fails to incorporate these allegations into Count I of the third amended complaint."

In addition, Airborne's poorly drafted complaints caused substantial delay and prejudice to its adversary. We have said in the past that delay—one of the factors named in *Foman* as a reason for refusing to grant leave to amend—would not be sufficient on its own as a grounds for denial of leave. Instead, we have found that "[d]elay must be coupled with some other reason. Typically [that is] . . . prejudice to the non-moving party." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004). In *Dubicz*, we found that the district court abused its discretion in refusing to grant plaintiff leave to amend solely because it had been dilatory in filing for eight months, where the defendant offered only conclusory allegations of prejudice. Here, the dilatory behavior has gone on much longer, with significant cost to Southwestern Bell, which has briefed three motions to dismiss. The district court was within its rights to take into account this type of prejudice. See *Park*, 297 F.3d at 613 (finding

that "it is apparent that prejudice would have resulted from" plaintiff's motion for leave to amend six months after she could have brought the claim and on the eve of trial, although the district court cited only the timing of the motion as reason for denying amendment).

We note finally that Airborne has not argued that the district court was demanding more detail than is required under FED. R. CIV. P. 8(a). In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), the Supreme Court wrote that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* at 1964-65 (citations omitted). Two weeks later the Court clarified that *Twombly* did not signal a switch to fact-pleading in the federal courts. See *Erickson v. Pardus*, 127 S.Ct. 2197 (2007). To the contrary, *Erickson* reaffirmed that under Rule 8 "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" 127 S.Ct. at 2200, quoting *Twombly*, 127 S.Ct. at 1964. Taking *Erickson* and *Twombly* together, we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8. The district court in this case concluded that Airborne's complaint fell below that minimum standard. Airborne has not challenged that decision; instead, it just wants one more round of pleadings. For the reasons we have given, we see no abuse of discretion in the district court's denial of that request.

*   *   *

The judgment of the district court is AFFIRMED.

No. 06-2949                                                     9

A true Copy:

        Teste:

                            _____
                            *Clerk of the United States Court of*
                            *Appeals for the Seventh Circuit*